**UNITED STATES of America, Through the FARMERS HOME ADMINIS-TRATION, Appellee,**

v.

**David E. NELSON; Marsha R. Nelson, Appellants.**

**No. 91–3262.**

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1992.

Decided July 7, 1992.

Michael J. McGill, Beresford, S.D., argued, for appellants.

Ted L. McBride, Sioux Falls, S.D., argued (Craig P. Gaumer, on the brief), for appellee.

Before BOWMAN, BEAM, Circuit Judges, and LARSON,[*] District Judge.

BOWMAN, Circuit Judge.

David and Marsha Nelson appeal the District Court's[1] decision (1) holding moot the Nelsons' appeal from the bankruptcy court's finding that the Farmers Home Administration (FmHA) violated the automatic bankruptcy stay and (2) reversing the ruling of the bankruptcy court that prohibited the trustee's sale of the Nelsons' property. We affirm the judgment of the District Court, but express our disagreement with a portion of the court's opinion.

In 1984, the Nelsons received a loan from the FmHA secured by a first mortgage on a sixty-acre farm in Union County, South Dakota. In 1985, the Nelsons moved from the farm to Beresford, South Dakota, and periodically over the next few years rented the farm to a neighbor. In 1986, the Nelsons stopped making payments on their loan. In 1987, the FmHA sent an "intent to take action" notice to the Nelsons, but any such action the FmHA might have taken was stayed by a nationwide moratorium on FmHA farm foreclosures. *See Coleman v. Block,* 580 F.Supp. 192 (D.N.D. 1983).

In November 1988, with the moratorium lifted and the protections of the Agri-cultural Credit Act of 1987 in place, the FmHA sent the Nelsons a "Notice of the Availability of Loan Service Programs for Delinquent Farm Borrowers." *See* 7 C.F.R. pt. 1951, subpt. S, ex. A (1989).[2] The Nelsons did not respond to that notice within the forty-five days permitted, nor did they respond to a follow-up sent in April 1989. After contacting the Nelsons in September 1989 in another attempt to resolve the problem of the delinquent loan, the FmHA accelerated the loan and sought mediation from the South Dakota mediation board. The Nelsons were not responsive to these efforts on the part of the FmHA.

On March 26, 1990, the Nelsons filed for protection as family farmers under Chapter 12 of the Bankruptcy Code. On April 6, 1990, the FmHA sent the Nelsons' counsel a "Notice to Borrower's Attorney Regarding Loan Servicing Options." *See* 7 C.F.R. pt. 1962, subpt. A, ex. D (1990). There was no response. The bankruptcy filing was converted to a Chapter 7 liquidation case on August 9, 1990, because the Nelsons did not earn more than 50% of their gross income from farming operations during the taxable year prior to filing. *See* 11 U.S.C. §§ 101(17)(A), 109(f) (1988). On October 5, 1990, the bankruptcy court approved a stipulation between the FmHA and the bankruptcy trustee to sell the farm. In December, the trustee attempted to sell the property free of all encumbrances, and the Nelsons objected.

The bankruptcy court considered the objections and held that the FmHA violated the automatic bankruptcy stay by sending the post-petition loan servicing letter on April 6, 1990. *In re Nelson,* 123 B.R. 993, 1000 (Bankr.D.S.D.1991) (subsequent history omitted). The court further held that the property may not be liquidated "until [Agricultural Credit] Act obligations have been fulfilled." *Id.* at 1004. In the view of

---

[*] The HONORABLE EARL R. LARSON, United States District Judge for the District of Minnesota, sitting by designation.

[1] The Honorable John B. Jones, Chief Judge, United States District Court for the District of South Dakota.

[2] This exhibit was added to the regulations September 14, 1988, but did not appear in the Code of Federal Regulations until the 1989 edition.

the bankruptcy court, the Nelsons were entitled to so-called "preservation rights" under the Act, which would grant them the first opportunity to attempt to buy or lease back the property from FmHA. According to the court's reasoning, these statutory preservation rights somehow attached to the Nelsons' homestead interest in the farm and so were exempted from the bankruptcy estate under state law, up to a value of $30,000. *Id.* at 1002–03. In addition, the court held that by stipulating to a liquidation sale the FmHA had accomplished the equivalent of foreclosing and taking the property into inventory, at which point the Nelsons became eligible for preservation rights. The FmHA appealed and the District Court reversed the bankruptcy court. The Nelsons appeal the decision of the District Court.

The issues raised by the Nelsons on appeal are questions of law. The District Court reviewed the bankruptcy court's conclusions de novo, and so do we. *Bush v. Taylor,* 912 F.2d 989, 992 (8th Cir.1990) (en banc).

The District Court held that the FmHA's appeal of the bankruptcy court's holding that the FmHA's post-petition loan servicing letter violated the automatic stay presented a moot issue to the court. The court noted that the only rights the Nelsons lost by not responding to the letter were primary loan servicing rights (the opportunity to restructure the loan so that the borrower is able to repay it), but those rights were unavailable to the Nelsons once they received their discharge in bankruptcy on November 21, 1990. Moreover, the District Court concluded that the bankruptcy court did not "sanction" the FmHA for sending the letter. Therefore the court viewed the issue's resolution on appeal as having "no real effect" and held that the issue was moot. *United States ex rel. Farmers Home Admin. v. Nelson (In re Nelson),* 143 B.R. 722, 724 (D.S.D.1991).

■ In order for a federal court to have jurisdiction over an action, there must be a live case or controversy at the time the case is decided. U.S. Const. art. III,

§ 2; *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). Clearly this is very much a live issue insofar as the FmHA is concerned. We do not agree that the FmHA was not "sanctioned" for sending the letter. We think that an adjudication that the FmHA was in violation of federal law is indeed a sanction, and one that the FmHA should be permitted to seek to reverse on appeal. The FmHA has in fact "suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc'y v. Heckler,* 464 U.S. 67, 70, 104 S.Ct. 373, 375, 78 L.Ed.2d 58 (1983). This Court can reverse the determination that the FmHA violated federal bankruptcy law. "[T]he judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). We hold that this issue is not moot and now address the merits.

■ Acknowledging the restrictions of the automatic stay in bankruptcy, the Secretary of Agriculture promulgated regulations pursuant to the power given by Congress, *see* 7 U.S.C. § 1989 (1988), for dealing with an FmHA borrower who becomes a debtor in bankruptcy. 7 C.F.R. § 1962.47 (1990). The regulations compel the FmHA county supervisor to send to the debtor's counsel explanations of the available loan servicing options, but prohibits the supervisor from sending the usual letter that accompanies such servicing information, which states that the FmHA will take legal action to collect the debt, including foreclosure, repossession, and offset—actions clearly in violation of the stay. *Id.* § 1962.-47(a)(3). The letter that should accompany the servicing information, according to the regulations, and the one that was in fact sent to the Nelsons' counsel, is set forth in 7 C.F.R. pt. 1962, subpt. A, ex. D. *See* § 1962.47(a)(3).

The text of the letter to the Nelsons' counsel read as follows:

We were recently notified that your borrower, David E. Nelson, has filed bank-

ruptcy. The enclosed forms explain some of the loan servicing options that FmHA has available. We would appreciate your informing your client of these options. In order to ascertain whether your client is eligible for these options, it is necessary for FmHA's employees to work closely with your client. We are concerned about whether such contact will be in violation of the automatic stay. If your client has filed under Chapter 11, 12, or 13 and wants to apply for servicing relief from FmHA, the case must be dismissed or the automatic stay must be modified for the limited purpose of permitting your client to apply for servicing relief. If your local jurisdiction does not sign orders providing limited relief from the automatic stay, please provide FmHA with a filed copy of your motion seeking limited relief from the automatic stay. A sample motion and order are available from the U.S. Attorney's office.. [sic] After dismissal or modification of the automatic stay, or attempted modification, your client must complete and return Attachment 2 of Exhibit A of Subpart S of Part 1951 of this chapter to enable FmHA to consider or grant any request for servicing. Unless the automatic stay is modified for this purpose or you seek a modification and it is not customary for your local bankruptcy court to approve such orders, or the case is dismissed, FmHA will not discuss any of the servicing options with you or your client. You may, of course, choose to file a proposed plan which may or may not contain debt restructuring features similar to those available from FmHA. If you intend to file a motion to allow your client to request and be granted servicing relief, we ask that you do so within 45 days. If no motion is filed within that time, we will assume that your client does not intend to make a request for servicing, and we will proceed to protect our interest, as allowed by the Bankruptcy Code.

FmHA's farmer programs debt servicing regulation is found at 7 CFR, part 1951, Subpart S. We cannot promise you or your client that a request for debt servicing will be approved. However, we can promise that a request will be fully and fairly considered by FmHA.

Letter from Rydell to McGill of 4/6/90, *reprinted in* Appellants' Addendum at 1–2. The letter is signed by the FmHA county supervisor.

■ We do not believe that this letter is in violation of the automatic stay. It was sent not to the Nelsons directly, but to their counsel, who presumably would be in a position to know or learn of his clients' rights under the bankruptcy law and would not be intimidated by a letter such as this. The letter provides options to FmHA borrowers who find themselves debtors in bankruptcy that few if any other secured creditors are likely to offer. In the letter, the FmHA recognizes that it may be restricted by the automatic stay from contacting the Nelsons directly regarding the loan servicing options unless the stay is modified, or modification is sought, for this limited purpose, or unless the case is dismissed. The dispatch of this letter is not an action to collect the debt in violation of the stay; instead it is an attempt to give the debtor an opportunity to reaffirm his loan and thereby possibly to keep the property, should he so choose. As spelled out in the letter, the FmHA's recourse, should the debtors decline to take the steps necessary to discuss servicing options, is nothing more than to "proceed to protect our interest, as allowed by the Bankruptcy Code." It is not a violation of the stay for a creditor to advise a debtor's counsel that he will take any action that he legally may take under the Code.

■ We think that the conduct of the FmHA was proper and, indeed, generous, especially in view of the Nelsons' pre-petition disregard of FmHA notices.[3] There is nothing in the letter that threatens "the

---

**3.** The FmHA might have accelerated the loan and taken legal action to recover the debt within 45 days of the November 1988 notice when the Nelsons refused to respond. *See* 7 C.F.R. pt. 1951, subpt. S, ex. D (1989). It instead chose to give the Nelsons numerous other opportunities to avoid legal action.

commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1) (1988). The only consequence of no response is that, at the end of forty-five days, the loan servicing offer is withdrawn and the FmHA protects its interest as would any other creditor in bankruptcy. It is not a violation of the stay to offer extraordinary options for loan servicing and then to put limits on the time within which they must be exercised.

In sum, we hold that the FmHA's April 6, 1990, loan servicing letter sent to the Nelsons' counsel was not in violation of the automatic bankruptcy stay.

The second issue on appeal concerns the propriety of the stipulation between the FmHA and the bankruptcy trustee agreeing to liquidate the Nelsons' farm free and clear of all encumbrances. We think the bankruptcy court erred when it characterized the stipulation as a "complex scheme designed to deprive" the Nelsons of their rights under the Agricultural Credit Act of 1987. *In re Nelson*, 123 B.R. at 1002. The court's statement that the trustee here was attempting "to gouge substantive congressional-given rights from the eyes of the debtors," *id.* (a colorful if not altogether coherent metaphor), is unfair and uncalled-for. We affirm the District Court's reversal of the bankruptcy court on this issue.

In Chapter 7 bankruptcy, any entity with an interest in property of the estate may agree to a sale of that property free and clear of its interests. 11 U.S.C. § 363(b)(1), (f)(2) (1988). The bankruptcy court's theory here is that the Nelsons are entitled to preservation rights and that those rights are encumbrances on the property. Thus the property cannot be sold free and clear unless the Nelsons waive those rights, regardless of the stipulation between the FmHA and the trustee. Assuming for the moment that a farmer-debtor's FmHA preservation rights can attach as interests to mortgaged property once that property is in his bankruptcy estate (an issue we do not reach), such a scenario is of no consequence here because the Nelsons never

were entitled to preservation rights in the first instance.

All agree that FmHA borrowers are eligible to exercise preservation rights—the right to buy back or to lease back the encumbered property—*only* when the property is in the FmHA's inventory. *See* 7 U.S.C. § 1985(e)(1)(A)(i) (1988); 7 C.F.R. § 1951.911(a) (1990). That is, the FmHA must have foreclosed on the property and be the current owner for preservation rights to accrue to the borrower. The stipulation to liquidate the property eliminated the need for the FmHA to foreclose on the property and take it into inventory, and thus rendered the Nelsons ineligible for preservation rights. The essence of the Nelsons' argument is that the trustee and the FmHA illegally subverted the rights of the Nelsons by entering into the stipulation and avoiding foreclosure. There is, however, no statutory or regulatory requirement that the FmHA foreclose on property that is security for an FmHA mortgage loan once the borrower is delinquent and loan servicing opportunities have been offered and rejected.

The bankruptcy court has reached far beyond its province by declaring that a stipulation between the trustee and the FmHA consenting to a sale is to be considered the same, for purposes of the Agricultural Credit Act of 1987 and the opportunity to exercise preservation rights, as the FmHA's taking the property into inventory. *See In re Nelson*, 123 B.R. at 1002. The proceedings are distinct; we will not collapse the two and render them equivalent when Congress did not.

The bankruptcy court also was mistaken in concluding that the Nelsons may claim $30,000 worth of preservation rights as a homestead exemption under South Dakota law. *See In re Nelson*, 123 B.R. at 1003. Homestead rights under South Dakota state law accrue only to owners who use the property as a home, S.D. Codified Laws Ann. § 43–31–2 (1983) ("[t]he homestead must embrace the house used as a home by the owner thereof"), and preservation rights accrue only to previous owners (and only if such owners elect to

exercise such rights). 7 C.F.R. § 1951.-911(a) (1990) ("The Farmer Programs Leaseback/Buyback Program will permit the previous owner of real property that was security for a Farmer Programs loan(s) to have the first opportunity to lease or purchase that property from FmHA."). The Nelsons cannot have it both ways; they cannot be both owners and previous owners.

 Further, we reject the bankruptcy court's conclusion that the stipulation was a "foreclosure-type" action that violated the automatic bankruptcy stay and deprived the Nelsons of the protections of the Agricultural Credit Act of 1987, 7 C.F.R. § 1955.15(d)(6) (1990). *In re Nelson,* 123 B.R. at 1001. If we were to adopt the reasoning of the bankruptcy court and agree that consent to a trustee's sale violates these federal laws, a Chapter 7 bankruptcy creditor could never consent to a trustee sale, although that is precisely what the Bankruptcy Code contemplates. *See* 11 U.S.C. § 363(f)(2) (1988). The stipulation violated neither the Bankruptcy Code nor the Agricultural Credit Act of 1987.

The Nelsons were given ample opportunity to deal with the FmHA outside the normal procedures of the bankruptcy court. Before filing bankruptcy—and even for some time after—the Nelsons could have worked with the FmHA and sought primary loan servicing or preservation rights. They chose instead to deal with the FmHA within the bankruptcy court and the confines of the Bankruptcy Code, and cannot now object when the FmHA acts to protect its creditor's rights under the Code. The rights of the FmHA as a creditor are not inferior to any other bankruptcy creditor merely because it offers extraordinary assistance to its borrowers in bankruptcy, subject to their affirmative action to accept it. *See United States Dep't of Agric. ex rel. Farmers Home Admin. v. Fisher (In re Fisher),* 930 F.2d 1361, 1363 (8th Cir. 1991) ("FMHA enters the [Chapter 12] bankruptcy proceedings the same as any other creditors").

The holding of the District Court on the propriety of the stipulation and the sale of the Nelson farm is affirmed. The District Court's conclusion that the issue whether the automatic stay was violated by the FmHA's loan servicing letter was moot is reversed, and the decision of the bankruptcy court finding a violation of the automatic stay is also reversed. The District Court's judgment vacating the bankruptcy court's order denying the sale of real estate and authorizing the sale of the Nelsons' property free and clear of all liens and encumbrances is affirmed.